**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO. 22-0015-WS** |
| | ) | |
| **ANTHONY JAMES WILSON,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

This matter is before the Court on the defendant's counseled motion for reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc.80).

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that … extraordinary and compelling reasons warrant such a reduction … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission ….

18 U.S.C. § 3582(c)(1)(A).

Relief under this provision, known as "compassionate release," thus requires satisfaction of four elements: (1) a proper motion; (2) a finding that extraordinary and compelling reasons for such relief exist; (3) a finding of consistency with Sentencing Commission policy statements; and (4) favorable consideration of the Section 3553(a) factors. After careful consideration, the Court concludes that the defendant satisfies none of these elements.

**I. Proper Motion.**

"[I]n order properly to exhaust, an inmate is required to present the same or similar ground for compassionate release in a request to the Bureau ["BOP"] as in a motion to the court." *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021).[1] The defendant says he has submitted to his warden a request for compassionate release, (Doc. 80 at 2, 6), but the letter he sent the warden did not request release, compassionate or otherwise, nor did it reference Section 3582(c)(1)(A). Instead, the defendant submitted an "urgent medical transfer request," seeking "transfer to an appropriate medical facility or Federal Medical Center capable of providing comprehensive oncology care." (Doc. 80-1 at 13).

**II. Extraordinary and Compelling Reason.**

Congress delegated to the Sentencing Commission the task of "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The Sentencing Commission has done so. U.S.S.G. § 1B1.13. The extraordinary and compelling reasons listed therein are the only ones that can support compassionate release, and district courts lack power to develop others. *United States v. Bryant*, 996 F.3d 1243, 1247-48, 1264-65 (11th Cir. 2021). The defendant relies on Section 1B1.13(b)(1)(C). (Doc. 80 at 2, 11).

Subsection (b)(1)(C) requires that the defendant have a medical condition necessitating "long-term or specialized medical care that is not being provided and without which [he] is at risk of serious deterioration in health or death." The defendant says he has been diagnosed with primary conjunctival mucosa-associated lymphoid tissue

[1] This Court has previously reached the same conclusion. *United States v. Young*, 2022 WL 1487389 at *2 (S.D. Ala. 2022); *see also United States v. Lopez*, 2024 WL 1979437 at *1 n.3 (S.D. Ala. 2024) (collecting cases).

("MALT") lymphoma of the left eye, that his physician suspects progression to Stage IV, that he has ordered an orbital MRI, recommended a PET/CT scan to evaluate for metastasis, and referred the defendant for radiation-oncology evaluation, and that he intends to schedule a bone marrow biopsy. (Doc. 80 at 1). The Court cannot independently confirm all these statements, because the medical records the defendant has submitted do not include the pages to which he cites.[2] The Court nevertheless assumes for present purposes that these are correct statements of the defendant's situation.

The defendant identifies the critical problem as that he has received a cancer diagnosis, that metastasis is suspected, and that interdisciplinary coordination will be required, but that things are moving too slowly, with neither diagnostic workup nor specialized treatment plans complete. (Doc. 80 at 2). He identifies what he considers to be inexcusable "interruptions and delays," (*id*.), but the asserted delays for which he provides evidence all occurred before he arrived in federal prison under custody of the Bureau of Prisons ("BOP"). The defendant repeatedly acknowledges as much. (*Id*. at 2, 6, 7, 8, 9, 12).

The defendant was sentenced in August 2022. (Doc. 54). Before serving his federal sentence, however, he served an unrelated state sentence. (Doc. 79 at 2). The defendant states that he entered federal custody in February 2026. (Doc. 80 at 7). Per the medical records cited by the defendant, he was housed at Montgomery County Jail under custody of the United States Marshals Service, not BOP, until at least early May 2026. (Doc. 82 at 413, 461).

[2] The defendant has submitted 478 numbered pages of medical records. (Doc. 82). For this and other information, the defendant relies on pages numbered in the 500's, which have not been submitted. However, some of the same information appears in the material provided. (*Id*. at 464, 469).

It is not clear that there was any undue delay even before the defendant entered BOP custody,[3] but there is no evidence of any delay since that time. The defendant asserts that "the necessary staging and treatment process has not been completed," (Doc. 80 at 12; *accord* at 2), but he offers no evidentiary support for this claim. He has submitted no medical records post-dating his transfer into BOP custody, but he does not assert that no such records exist. On the contrary, by citing to pages that are not in the record, *see* note 2, he indicates that such records do exist. Without offering evidence of what has (or has not) occurred since he entered BOP custody in May, the defendant cannot show that BOP is interfering with the provision of medical care to him. The Court cannot on the record before it conclude that "long-term or specialized medical care ... is not being provided" to the defendant while in BOP custody.

The defendant notes that he also has latent (inactive) tuberculosis, diabetes, dyslipidemia, and hypertension. He suggests that his care for these conditions has been "complicated by custodial transfers, medication verification, formulary approval, outside-care authorization, missed doses [the patient being periodically non-compliant], and gastrointestinal side effects." (Doc. 80 at 6). To the uncertain extent these matters are relevant to the defendant's subsection (b)(1)(C) argument, (*id*. at 12), any documented issues occurred prior to the defendant entering BOP custody, as he acknowledges. (*Id*. at 6, 9). To the uncertain extent the defendant suggests that these issues, combined with those surrounding his cancer diagnosis, satisfy Section 1B1.13(b)(5), (*id*. at 6, 11), he offers no argument in support (or even citation to that provision), and the Court is unable to draw such a conclusion.

[3] On April 28, only four calendar days after the defendant's doctor ordered an orbital MRI, recommended a PET/CT scan, and recommended referral for radiation therapy evaluation, jail medical personnel requested multiple office appointments. (Doc. 82 at 469).

**III. Policy Statements.**

Even when extraordinary and compelling reasons for a sentence reduction exist, relief is statutorily prohibited unless the Court finds that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission …." 18 U.S.C. § 3582(c)(1)(A). The Commission's policy statement includes the requirement that "the court determin[e] that the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(2).

The defendant pleaded guilty to charges of: possession with intent to distribute methamphetamine; felon in possession of a firearm; and possession/use/carriage of a firearm during a drug offense. (Docs. 25, 26). These offenses occurred in September and October 2020. (*Id.*). In 1992, the defendant pleaded no contest in Florida state court to attempted murder, first degree, with a firearm, along with attempted robbery with a firearm, after he shot the victim with premeditated intent to kill in the course of an attempted robbery. The defendant served approximately fifteen years (including three upon violation of parole). (Doc. 45 at 10-11). In 2017, he was arrested on state drug and gun charges. (*Id.* at 12). The defendant pleaded guilty to a drug charge; the gun charge was *nolle prossed*. (Doc. 77-1 at 8).

The defendant argues that his early release will not create "unmanageable danger," based on his age, medical conditions, treatment obligations, stable residence, and supervised release. (Doc. 80 at 2-3, 14). The defendant also proposes electronic monitoring and home confinement, a prohibition on possessing weapons, travel and associational restrictions, and other measures. (*Id.*). As a threshold matter, the Court must determine that the defendant is "not a danger," not simply that the danger he poses is "manageable." In light of the defendant's persistent interaction with drugs and firearms, the Court is unable on this record to make the necessary finding. The Court further notes that the defendant has offered no evidence of rehabilitation to persuade the Court that his dangerous tendencies are behind him.

**IV. Section 3553(a).**

The defendant was arrested on the instant charges in February 2022. (Doc. 7). The Court sentenced the defendant to a statutory minimum term of 120 months. (Doc. 45 at 17). As noted, although that sentence was imposed in August 2022, the defendant served an unrelated state term until, apparently, February 2026. The precise amount of time the defendant has served of his ten-year sentence is unspecified, but it cannot be much more than one year.

The defendant argues that the Section 3553(a) factors favor him because: (a) he is four years older than when he was sentenced; (b) he has served a state sentence (on unrelated charges) in the interim; and (c) his medical circumstances have materially changed. (Doc. 80 at 13). As noted in Part III, the defendant does not claim to have experienced any rehabilitation.

The Court, after considering each of the Section 3553(a) factors in light of the record, remains satisfied that the sentence it imposed is sufficient, but not greater than necessary, to satisfy the purposes set forth in Section 3553(a).

**V. Conclusion.**

For the reasons set forth above, the defendant's motion for reduction of sentence is **denied**.[4]

DONE and ORDERED this 18th day of August, 2026.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

[4] The defendant's requests for a hearing, an expedited hearing, oral argument, and an order directing BOP to provide the Court an immediate status report regarding his medical care at his BOP facility, (Doc. 80 at 3, 15), as well as for any other relief, construed as a motion for such relief, is **denied**.